# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

*OF THE STATE OF NEW-JERSEY.*

JANUARY TERM, 1839.

SAMUEL GARWOOD v. The Administrators and Heirs of WILLIAM ELDRIDGE.

S. G. having purchased of the owner certain real estate, subject to two mortgages, and a judgment, applied the whole of the purchase money to the satisfaction of the mortgages, being the first incumbrances, and caused them to be cancelled and discharged of record. *Held*, that a purchaser under the judgment, took the property clear of the incumbrance of the mortgages, and that S. G. was entitled to no relief in equity.

It is a well settled general principle, that equity will not relieve from the consequences of an act fairly done on a full knowledge of the facts, though under a mistake of the law. *Ignorantia legis neminem excusat*, is the general rule as well in equity as at law.

But where a mistake has taken place in the *facts* as well as the law, or where some suppression of the truth, fraud or contrivance has been practised, equity will interfere.

The person paying off a mortgage can be substituted in the place of the mortgagee, only, where the mortgage is taken up by a third person, and not where it is satisfied by the mortgagor himself.

A cancellation of a mortgage, and a discharge of record, unless effected through fraud, accident or mistake, is an absolute bar and discharge of the mortgage.

THE bill in this cause was originally filed by Samuel Garwood, against William Eldridge in his life-time. Eldridge hav-

20

ing died intestate during the progress of the cause, the suit was revived against his administrators and heirs at law. The bill charged, that Josiah Smith, being seized in fee of a house and lot of land, containing between nine and ten acres, situate in the county of Burlington, on the 27th of February, 1810, executed, together with his wife, to William Rive and John Evans, the executors of John Smith, a mortgage upon said premises, to secure the payment of a bond for three hundred and seventy dollars, given by Josiah Smith to said executors, bearing date on the 26th day of February, 1810. This mortgage was recorded on the 9th day of March, 1810, and passed with the bond to Zebedee Wills and Isaac Haines, by assignment, on the 10th day of June, 1817.

On the 29th day of April, 1815, Josiah Smith and wife executed to Aaron Engle, a second mortgage upon the same premises, to secure the payment of a bond of six hundred and fifty dollars, given by Smith to Engle, which was recorded on the 19th day of May, 1815.

On the 6th day of January, 1824, Josiah Smith and Mary his wife, in consideration of five hundred dollars, sold and conveyed the said premises to the complainant. This deed contained a covenant of general warranty, and was recorded on the 27th day of January, 1824. The complainant, in pursuance of an understanding with Josiah Smith, paid to Wills and Haines, in satisfaction of their mortgage, one hundred and forty dollars, and to Aaron Engle, on account of his mortgage, three hundred and sixty dollars, being the residue of the purchase money. The contract for the purchase of the land was made by the complainant with Smith on the 15th day of March, 1823, and the execution of the deed was delayed, by the infancy of Smith's wife, until the 6th day of January, 1824. At the time of the purchase the mortgages were valid and subsisting liens upon the property, the amount due upon them exceeded the whole purchase money, and Smith assured complainant that there were no other liens upon the premises.

On the 30th day of May, 1822, a judgment was entered up

in the inferior court of common pleas of the county of Burlington, in favor of the defendant, William Eldridge, against Josiah Smith, upon a bond with warrant of attorney to confess judgment, given by Smith to Eldridge, in the penalty of one thousand dollars, conditioned for the payment of five hundred dollars on demand, with interest. A writ of fieri facias was issued upon this judgment, and on the 13th day of April, 1834, the land of Smith which was included in the mortgages above mentioned, was sold by the sheriff, under said execution, and struck off to William Eldridge, for three hundred and thirty dollars. A deed in pursuance of the sale, was executed by the sheriff to Eldridge on the 19th day of April, 1824.

The bill charged, that the complainant was ignorant of Eldridge's judgment at the time of entering into the contract and taking the deed from Smith; that Eldridge was informed of complainant's contract, and also of the execution of the deed by Smith; that Eldridge never informed complainant of his judgment, but encouraged him to make the purchase; that Eldridge knew of the existence of the mortgages upon the property; that complainant paid the purchase money toward the satisfaction of those mortgages, and that he caused one of them to be cancelled of record on the 27th of January, 1824, and the other on the 14th of April, 1824; that Eldridge delayed proceeding on his execution until the mortgages had been discharged; that complainant was ignorant that by causing the mortgages to be cancelled and discharged, the judgment would become a lien upon the premises, being prior to the complainant's deed, or that he ought to have taken an assignment of the bonds and mortgages to himself, to guard against the judgment of Eldridge.

The bill further charged, that the bond given by Smith to Eldridge was given as an indemnity against loss by reason of his being security for Smith as constable; that the monies advanced by Eldridge had been repaid, and his judgment satisfied, prior to the sheriff's sale; that Smith was wholly insolvent, so that complainant had no remedy upon the covenants in his deed; and that Eldridge had commenced an action of ejectment

[Garwood v. Adm'rs of Eldridge.]

at law, for the recovery of the premises, under his title derived from the sheriff.

The bill prayed that the mortgages might be established and confirmed as existing liens and incumbrances upon the premises for the amount of principal and interest paid by complainant, with interest from the date of payment; that an account might be taken of the amount, and Eldridge decreed to pay the same, or that the complainant might stand seized in the place and stead of the mortagees, and have a decree for foreclosure; or that Eldridge's deed might be ordered to be delivered up to be cancelled, and he restrained from proceeding at law.

An answer was filed by the administrators and the heirs at law, admitting the mortgages, judgment, sheriff's sale, and the ejectment, as charged in the bill, but denying the satisfaction of Eldridge's judgment, and all fraud upon his part, and insisting upon the legal rights acquired by Eldridge under the sheriff's deed.

The cause was heard at October term, 1838, upon the bill, answer, replication, and proofs.

*Wall*, for complainant.

*Kinsey* and *H. W. Green*, for defendants.

The Chancellor: A short statement of facts will present every thing in this case necessary for its decision. Josiah Smith, being the owner in fee of a lot of land of between nine and ten acres, in the county of Burlington, executed with his wife a mortgage on the same, on the 26th of February, 1810, to the executors of John Smith, to secure a bond for three hundred and seventy dollars. Sarah Jones was also a party to this mortgage, and there was embraced in it a lot belonging to her. This bond and mortgage was assigned finally to Zebedee Wills and Isaac Haines. On the 29th of April, 1815, Josiah Smith and his wife made a second mortgage on the same premises, to Aaron Engle, to secure a bond for seven hundred and fifty dollars. These mortgages were both placed on record in the county of

[Garwood v. Adm'rs of Eldridge.]

Burlington, shortly after their execution. On the 6th of January, 1824, the mortgaged premises were conveyed by Josiah Smith and wife, the above stated mortgagors, to the complainant, for the consideration of five hundred dollars. This money was applied to the payment of the two mortgages on the property, on which there was then due about five hundred dollars ; upon which, by the consent of all parties, they were discharged and cancelled of record.

William Eldridge obtained a judgment against Josiah Smith in the inferior court of common pleas of the county of Burlington, on the 30th of May, 1822, and issued execution thereon to the sheriff of that county, returnable to the term of August thereafter. This judgment, although long subsequent to the date of the cancelled mortgages, was prior to the complainant's deed, and therefore at law bound the property free and clear of incumbrances. By virtue of this execution the sheriff, shortly after the complainant's purchase, and on the 19th of April, 1824, sold and conveyed the aforesaid premises to William Eldridge, the plaintiff in the execution, for three hundred and thirty dollars. From the evidence of John Crispen, the only witness examined on this subject, it would seem that the price paid by the complainant was a full and fair consideration for the premises ; and from Eldridge's lying still with his execution, from August, 1822, until after the complainant had discharged the mortgages, as well as from the price paid by him at the sheriff's sale, it is to be presumed that the property would have brought nothing beyond the incumbrances.

Under these circumstances, the complainant asks the interference of this court. At law, it is quite certain, he is without remedy ; for although he may have been, as he alleges, without actual notice of the Eldridge judgment at the time he purchased, yet he had constructive notice by the record, and unless the power of this court is sufficient to grant relief, the complainant will have lost the five hundred dollars with which he paid off the mortgages, and Eldridge will have received on his purchase the exclusive benefit thereof. There is then, to my mind, a natural

justice in the complainant's case, to which I should be disposed to extend relief, if I could do so without disturbing well established principles.

The first ground upon which this relief is asked, is, that the complainant cancelled these mortgages unwittingly, and without a knowledge of the legal effect of that act. It is not from any mistake or want of knowledge of facts, but of the law; for as to the existence of the judgment, he had, or might have had full knowledge, by using the ordinary and proper precaution of examining the public records. "*Ignorantia legis neminem excusat*," is the general rule, as well in equity as at law. This rule is not without its exceptions, and it would seem those exceptions are not by any means well settled. The American cases have been strenuous in supporting the general rule, from the great danger of opening a door for so common a pretence. It has been decided, that a court of equity could not relieve an obligee when he released one joint obligor, supposing the other to be bound. In the case of *Lyon and another* v. *Richmond and others*, 2 *John. Ch. Rep.* 60, the chancellor says : "The courts do not undertake to relieve parties from their acts and deeds fairly done on a full knowledge of facts, though under a mistake of the law. Every man is to be charged at his peril with a knowledge of the law. There is no other principle which is safe and practicable in the common intercourse of mankind." The same principle is afterwards recognized in the case of *Storrs* v. *Barker*, 6 *John. Ch. Rep.* 170. Many of the cases in which exceptions to this general rule have been allowed, are those in which a mistake in the facts, as well as the law, has taken place, or some suppression of the truth, fraud or contrivance in the party. In such cases, there can be no doubt, it is the peculiar province of this court to interpose. This whole subject, with a reference to the cases, will be found ably and fully discussed in 1 *Story's Equity*, 121; in which it will be found, that able judge is tenacious of adhering to the general principle. In the present case, I cannot bring myself to believe that the complainant acted under any misapprehension of the law. He

had purchased the property ; and his plain course, believing as he alleges he did, that the property had no other liens upon it than the two mortgages, was to take them up and cancel them. There is no fraud proved on the part of Eldridge, the judgment creditor. He was not bound to give any more information of the existence of his judgment, than the records of the court furnish. It was the result of carelessness and neglect in the party not to have examined at the proper office for liens on the property. It is asking too much of the credulity of the court, to believe that a man competent to the transaction of business, and buying property, should not understand the law upon tearing off the seals and cancelling mortgages of record. It is far more natural to suppose that the complainant, believing these the only incumbrances, intended to relieve his property from them by their discharge and cancellation. Upon this ground, therefore, I must deny the complainant the relief here sought.

The remaining ground taken by the complainant is, that he should be placed in the situation of the mortgagees ; in other words, that new life and action should be given to those instruments, so that they may stand now in the complainant's hands as subsisting liens on the property. There are cases, undoubtedly, in which courts of equity have, after the discharge of a bond and mortgage, substituted the person who took them up in the place of the mortgagee, and kept them alive. This was expressly recognized in the case of *Coster, exparte,* 2 *John. Ch. Rep.* 503. These cases are where the bond and mortgage are discharged by a third person, and not where they are taken up by the obligor himself. In fact, in the case just cited, the chancellor declined making any order for assigning the bond and mortgage, because it had been paid off by the obligor himself. In the present case, the bonds and mortgages can hardly be said to have been taken up by a stranger—they were virtually taken up by Smith himself. This was done with the purchase money for which he sold the land, and that money extinguished the incumbrances. Smith's deed covenants against all incumbrances, and obliged him, therefore, to have them discharged. In such

cases, the courts have refused to interfere.   *Toulmin* v. *Steele,* 3 *Merriv.* 221; *Parry* v. *Wright and others,* 1 *Cond. Ch. Rep.* 188.   The complainant purchased the property, subject of course to all incumbrances; and if by his own neglect in examining the public records, he has found himself embarrassed by this judgment, it is his own fault.   Was it his intention to cancel the mortgages?   I have no doubt it was.   He meant to extinguish the incumbrances; and should they now be reinstated, it would be against the express intention of the parties.   What right has this court to bring to life obligations which Smith himself, the obligor, has taken up and caused, by the understanding of all parties, to be cancelled on the public records?   The complainant purchased only the equity of redemption of Smith in these lands, and he was as much bound to see that the judgment was removed as the mortgages.   There is nothing in the case looking like fraud or improper concealment of the Eldridge judgment, or mistake in cancelling the papers, but a mere neglect of complainant in not examining the records.   To interfere in such a case, and put the complainant in the place of the mortgagees, would introduce, in my opinion, a dangerous precedent, and encourage parties in the grossest negligence.   Should this course be taken, what shall be done with the purchase by Eldridge?   By reason of the property being freed from all incumbrances, he paid three hundred and thirty dollars for his purchase.   Is he to lose this money?   Suppose another had purchased, could he be affected by it?   And if not, can the plaintiff in the execution, standing as the purchaser, be any otherwise affected?

It must be borne in mind, too, that the complainant not only neglected to have an assignment of these bonds and mortgages made to him, and had the seals torn off as evidence of their being discharged, but caused them to be cancelled on the public records.   Our statute (*Revised Laws,* 464) declares such cancellation of record, when the mortgage has been redeemed, paid and discharged, to be an absolute bar and discharge of the same.   I am aware that this statute has been held repeatedly

[Garwood v. Adm'rs of Eldridge.]

not to apply to a case where such cancellation may have taken place through fraud, accident or mistake. In the present case, the cancellation was made without either fraud, accident or mistake, but with the consent and understanding of all the parties. After the best reflection on this part of the case, and from looking into the authorities, I am constrained to think it would be an improper exercise of the jurisdiction of the court, to grant the relief asked.

The remaining point in the case relates to the Eldridge judgment. The complainant alleges that it has been paid off. There is some evidence to that effect. It seems to have been given as an indemnity, and I am willing to have this subject more fully inquired into.

I shall, therefore, direct a reference to a master, to ascertain and report whether the Eldridge judgment has been paid, when, and under what circumstances. The question of costs, and all other matters, are reserved.

Order accordingly.