## GRIFFIN *vs.* GRIFFIN.

1. By the law of England, and of the state of New York, if a debtor deposits unrecorded title deeds with his creditor, as security for his debt, such deposit constitutes an equitable mortgage on the land for the debt. And this court will not compel the creditor, when he resides or is found in this state with deeds in his possession for lands in New York, so deposited in that state, to surrender them until the debt is paid.

2. The fact that a title deed is not recorded, nor in the possession of the grantee, might be sufficient notice to a purchaser or mortgagee of such equitable pledge as to put him upon inquiry. But a widow of the pledgor, who purchases the title of his children and heirs, without any money consideration paid, is not a purchaser for value so as to dispute such equitable mortgage because not registered.

3. If the owner of lands pledges his deeds, which are his property, as security for a debt, neither he nor his heirs are entitled to their return until the debt is paid, apart from the doctrine of equitable mortgage.

*Mr. B. C. Chetwood*, for complainant.

*Mr. J. P. Jackson*, for defendant.

THE CHANCELLOR.

The complainant is the widow of Isaac Griffin, who died in the city of New York, on the thirteenth of March, 1864; he was seized at his death of two tracts of land at Spring Valley, in Rockland county, in the state of New York, on which he had resided for several years.

He died intestate, leaving two children, both of whom have, for the nominal consideration of one dollar, conveyed their interests in said lots to their mother, the complainant; the conveyance from one was before the filing of the bill, and that from the other is dated after filing the bill and answer, and after the complainant was examined as a witness in this cause.

The bill alleges that the deeds by which these lots were conveyed to James M. Griffin were not recorded, and that the defendant, about the time of the death of Isaac Griffin, came to the house of the complainant, and fraudulently, and without her knowledge, took and carried away these deeds.

She claims the right to the deeds as her muniments of title, she being the owner of the land, and the relief prayed is, that the defendant may be compelled to restore and deliver the deeds to her.

The defendant, by his answer, alleges that he lent to Isaac Griffin, who was his brother, in his life time, five hundred dollars, which was needed and used in part payment at the

purchase of these two lots, for which Isaac agreed to secure him by a mortgage on these lots; that the mortgage was never given, and that Isaac, in the month of February before his death, at Kerr's hotel, in the city of New York, delivered to him these two deeds to keep as security for the payment of this loan of five hundred dollars, no part of which was paid; and he denies going to, or taking them from, the house of the complainant.

The evidence shows, without doubt or contradiction, that the defendant loaned Isaac Griffin five hundred dollars, which has not been repaid, and that Isaac Griffin, at Kerr's hotel, in New York, handed to him these deeds, to keep as security for that debt.

It further appears from the evidence, including that of the complainant herself, that for a month before his death, Isaac Griffin had not been at his house in Spring Valley where the complainant lived, but stayed at Kerr's hotel, in New York. That the complainant had instituted a suit for a divorce against him. That he was taken sick at Kerr's hotel, and the defendant, at Kerr's request, had taken care of him there, and removed him to his house in Newark. That the complainant did not take care of him in New York, nor, although in the city and knowing his sickness, did not visit him more than once, if at all, but after his removal to Newark, went out there, and in the absence of his brother James and his wife, took him back to New York to rooms provided by her there, where in a few days, he died.

The deeds were delivered by Isaac to James before he was taken to Newark; he claims to hold them as security for his debt, and offers to surrender them upon receiving payment.

Courts of equity, in England and in this country, have for many years recognized the validity of an equitable mortgage by the deposit of title deeds by a debtor with his creditor as security for the repayment of a debt, and have held that the mere fact that a creditor was in possession of the title deeds of his debtor, raised the presumption that they were deposited as security for the debt, and created an equitable mortgage.

*Coote on Mortgages* 195; 3 *Powell on Mortgages* 1050; 4 *Kent* 150; 2 *Story's Eq. Jur.*, § 1020; *Russell* v. *Russell*, 1 *Bro. Ch. Cas.* 269; *Plumb* v. *Fluitt*, 2 *Anst.* 432; *Ex parte Mountfort*, 14 *Ves.* 606; *Ex parte Langston*, 17 *Ibid.* 230; *Ex parte Kensington*, 2 *Ves. & B.* 79; *Russel* v. *Russel*, 1 *White & Tudor's L. C.* 541; *Bozon* v. *Williams*, 3 *Younge & Jervis* 150.

This doctrine is acknowledged in the state of New York, where the land lies, and in which this transaction took place, and the laws of New York must govern as to the lien on the lands situated in it. *Jackson* v. *Dunlap*, 1 *Johns. Cas.* 114; *Jackson* v. *Parkhurst*, 4 *Wend.* 369; *Rockwell* v. *Hobby*, 2 *Sandf. C. R.* 9.

By the registry acts of New York, this equitable mortgage by deposit of the deeds, would be invalid as against a *bona fide* purchaser or mortgagee for valuable consideration, and without notice.

The complainant is not a purchaser for a valuable consideration. Her claim is as dowress and by releases from her children, which are for a nominal consideration; she does not prove any consideration. As to notice, one of the deeds to her was given and dated after answer filed, and after she had been examined as a witness and testified that it had been made to her without notice of the equitable mortgage.

Were she a purchaser for valuable consideration, the fact that no deeds were on record or in possession of the heirs, might be held sufficient notice to put such purchaser on inquiry. Few purchasers would take title under such circumstances.

Besides, without the established doctrine of an equitable mortgage, by the deposit of title deeds, the equity of the case is with the defendant. The decedent owed him five hundred dollars. He owned the deeds, they were his absolute property; he placed these unrecorded deeds in the hands of the defendant, to be kept by him as security until the debt due to him should be paid. Under these circumstances, a court of equity will not interfere in favor of the complainant until

she does equity, and pays the debt for which the deeds were pledged. *Head* v. *Egerton*, 3 *P. W.* 280.

The bill must be dismissed with costs.