## BIEBINGER v. CONTINENTAL BANK.

A customer of a bank, who had deposited with it, as collateral security for his current indebtedness on discounts, the note of a third person secured by mortgage, and had withdrawn the same after maturity, for the purpose of foreclosure and collection, under an agreement to return the proceeds, or to replace the note by securities of equal value, purchased the mortgaged property at the foreclosure sale. At the request of the bank he deposited with it the deed he had received for the property. His indebtedness to the bank was then fully paid, and his dealings with it were temporarily suspended. He afterwards incurred debts to it; and on his becoming an adjudicated bankrupt, it filed its bill against his assignee, claiming an equitable lien in its favor upon the property. The bill contained no allegation of money loaned or debt created on the faith of the deposit of the deed, and it prayed for the specific performance of the agreement to replace the note withdrawn. *Held*, that the bank could not claim an equitable mortgage by such deposit.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The facts are stated in the opinion of the court.

The case was submitted upon printed arguments by *Mr. J. O. Broadhead* for the appellant, and was argued orally by *Mr. Preston Player* for the appellee.

MR. JUSTICE MILLER delivered the opinion of the court.

The partnership firm of Yeager & Co., composed of Yeager and Crandall, were declared bankrupts Oct. 24, 1873, by the District Court of the Eastern District of Missouri, and the appellant duly appointed assignee. At the time of their failure Yeager & Co. had the legal title to a mill in Washington County, Illinois, and the Continental Bank, the appellee, filed its bill in chancery in the Circuit Court for the Eastern District of Missouri, against the assignee, alleging a large indebtedness of the bankrupts to the bank, for the security of which they were entitled to an equitable lien on the mill property in Illinois, above mentioned.

The facts as recited in the bill, out of which this lien is said to arise, are shortly these : For several years prior to 1871 the bankrupts had been doing business with the bank and had a line of discounts amounting generally to upwards of $50,000. There had also been on deposit with the bank as collateral security for this current indebtedness, among other paper of the same

kind, a note of Harriman & Co. to Yeager & Co. for $20,000, secured by a mortgage on the mill. This note being overdue and unpaid, Yeager & Co. applied to the bank for its delivery to them that they might foreclose the mortgage and collect the money, promising to pay the money if collected, or return to the bank whatever might be recovered in the foreclosure proceeding. The bank complied with this request, taking a receipt from Yeager & Co., which will be presently considered, dated Feb. 11, 1871. The mortgage was foreclosed, the property sold and bought in by Yeager & Co., who on the 6th of December, 1872, received in their own name the master's deed, which was duly recorded in Illinois, Dec. 20, 1872.

It is further alleged that shortly after this deed was made to Yeager & Co., it was, at the suggestion of the bank, delivered to it, and remained there until suspicion was excited that this deposit might not give them a lien on the property. A mortgage of the property to the bank was drawn up by its attorney, which one of the bankrupts promised should be executed, but which was not done; and matters remained in this condition when the bankruptcy proceeding was instituted, at which time, as the bill states, the bankrupts were indebted to them over $40,000.

Pending the litigation, the property was sold under a stipulation for $7,369.90, and the money paid into court; and for this sum a final decree was rendered in favor of the bank, from which this appeal is taken.

The assignee filed an answer, affirming ignorance of the facts alleged, and putting them in issue.

Most of the matters stated in the bill are supported by the evidence. The original pledge of the note and mortgage of Harriman, their withdrawal under a promise to return them or their proceeds, or to supply their places by some equivalent, seem fairly established. The purchase of the mill property under foreclosure proceedings, the deposit of the master's deed with the bank, and the indebtedness of Yeager & Co. to the bank at the time of their failure, are sufficiently proved. It would seem, under these circumstances, that the equitable lien asserted by complainants in their bill is established. But there is one fatal defect in the grounds on which this equity rests.

It is established, we think, by the evidence of complainant's witnesses, the officers of the bank, that every dollar of the indebtedness of Yeager & Co., existing at the time they withdrew the note and mortgage of Harriman, was fully paid off and discharged before they purchased the mill and received the title, and that a total interruption or suspension of loans or discounts took place in the summer of 1872.

It is impossible to hold, under these circumstances, that for a new debt made on a renewal of business relations the bank retained any lien on the note and mortgage which had been delivered up, or on the proceeds of the foreclosure sale. All that it stood for when so delivered up had been paid. By this payment the lien was released or discharged. To test this proposition let us suppose that when the master's deed came to the hand of the bankrupts there had been $10,000 due the bank, for which the original note and mortgage had been pledged to the bank, and the bank had demanded of Yeager & Co. a compliance with their promise to place in their hands the proceeds of the foreclosure. Can it be doubted for a moment that Yeager & Co. by paying the $10,000 due would have fulfilled their promise, and would have been released from any obligation to give a lien on the mill property?

The language of the receipt given by Yeager & Co. when the original note and mortgage were delivered to them shows this very clearly. It says : " Whereas, the subscribers being indebted to the National Loan Bank of St. Louis (afterwards the Continental) to a considerable amount on sundry notes and drafts, and having given said bank the following-described notes, secured by a deed of trust to secure said bank against loss, which have been delivered to said Yeager & Co. for the purpose of disposing of them," they agree if they do not return them in a reasonable time to replace them by others of equal value.

Now, what was secured by the notes and mortgage? Clearly the amount they then owed, evidenced and identified by notes and drafts then in existence. Not only is there here no allusion to security for any future transactions, but the parties acted on this idea; for during the two years they were engaged in foreclosing the mortgage, not only were all these notes and drafts paid, but there was a period of some months in which

the bankrupts owed the bank nothing, and in which there was no business transacted between them. This is sworn to clearly by the cashier of the bank, who says there was quite a number of months we did not see the bankrupts in the bank. Mr. Yeager, the bankrupt, testifies to the same thing; namely, that for a long time during this period the bank stopped taking paper from them, and it was all paid up. Mr. Crandall declares that none of the paper held by the bank at the date of their failure was for money discounted in 1872, and that they owed them nothing which they owed them in 1872. It is true the president of the bank suggested rather than affirmed that renewals ran into the present time, but refused on request to produce the books or transcripts from them to show this fact. The cashier, whose deposition was taken a second time, after full opportunity to examine the books, did not retract or modify his first declaration on this subject.

We are of opinion, therefore, that there was no lien for the bank's debt growing out of the original pledge of the note and mortgage of Harriman, or of any promise made when it was returned to Yeager & Co.

As regards the subsequent transactions, there are no allegations in the bill which would bring the case within the principle of an equitable mortgage by deposit of title-deeds, if that doctrine is recognized in the State of Illinois, where the land lies, or of Missouri, where the transaction occurred. There is no allegation of money loaned or debt created on the faith of the deposit of this deed. On the contrary, the allegation is that the bankrupts owe complainants over $30,000, which will be wholly lost unless the assignee be compelled to perform the contract of Feb. 11, 1871, which was the date of the receipt taken from Yeager & Co. when the note of Harriman was returned to them. And the prayer of the bill is for specific performance of that contract. No such suggestion is made in argument, and no proper foundation for relief on that ground being found in the bill, it is unnecessary to consider it here.

The decree of the Circuit Court will therefore be reversed, and the case remanded with directions to dismiss the bill; and it is

*So ordered.*