MICHAEL RUDNICK vs. NATHAN GREENFIELD & others.

Suffolk.   December 8, 1931. — January 25, 1932.

Present: RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Pledge.   Contract,* Construction.

In a suit in equity to reach and apply to the defendant's indebtedness to the plaintiff the defendant's interest in a mortgage and mortgage note running to the defendant, it appeared that the mortgage and mortgage note were assigned and pledged by the defendant to a bank to secure a note of the defendant payable to the bank and also all his other existing and future liabilities, direct and contingent, to it; that the defendant's note to the bank subsequently was paid in full and returned to him; that on the same day the bank made a loan to one of the defendant's sons to replace a loan previously made to another son and secured by another mortgage and mortgage note of which the defendant was one of the makers; that it received a note from the first son and the second described mortgage and mortgage note were assigned by the bank to the second son and by him to the first son and by him back to the bank to secure the new note; that the defendant at that time wrote an order on the first described mortgage note authorizing the bank to apply all future payments thereunder on the first son's note; and that the bank retained the mortgage note first described and the order thereon up to the time of the commencement of the suit thereafter.   It was found that at the time of the loan to the first son the defendant was not indebted to the bank; and a decree was entered adjudging that the mortgage and mortgage note first described were not held by the bank as security for the first son's note and that the plaintiff was entitled to have them reached and applied to the defendant's indebtedness to the plaintiff. *Held,* that

(1) In the circumstances the finding was not clearly wrong;

(2) When the defendant's note to the bank was paid and the bank reassigned to the second son the mortgage and mortgage note second described, the bank, although having in its possession the mortgage note first described and having title of record to the mortgage first described, had no lien upon them arising either from contract or by implication of law, and thereafter gained no lien unless by reason of a new contract: the bank held no title to them superior to that of the defendant's creditors in the absence of a repledge thereof to the bank to secure the indebtedness of the first son;

(3) In the circumstances, the order indorsed by the defendant on the first mortgage note was not an irrevocable assignment of funds

coming due the defendant, but amounted to no more than a direction for the application of collections; and gave the bank no rights in the first mortgage and mortgage note superior to those of attaching creditors of the defendant;

(4) The decree was proper.

BILL IN EQUITY, filed in the Superior Court on June 10, 1930.

The suit was referred to a master. Material facts found by the master in his report and supplemental report upon recommittal are stated in the opinion. A further motion to recommit was denied by *Weed*, J., by whose order there were entered an interlocutory decree confirming the report and supplemental report; and a final decree described in the opinion. The defendant Broadway National Bank appealed from the final decree.

*C. A. Warren*, (*N. R. Voorhis* with him,) for the defendant Broadway National Bank.

*W. A. Heller*, for the plaintiff.

SANDERSON, J. In this bill filed June 10, 1930, the plaintiff sought to reach and apply the interest of Nathan Greenfield in a note originally for $5,300 secured by a second mortgage on real estate in Chelsea given by Ida Woogmaster to him (herein called the Woogmaster note and mortgage), and by him assigned to the defendant Broadway National Bank (herein called the bank) as security for his collateral note for $4,000 dated August 23, 1927. The case was referred to a master and the report first filed was recommitted for the purpose, in part, of taking "the testimony of the president of the defendant bank relative to the conversation which occurred when the order of Nathan Greenfield on the back of the $5,300 note dated August 23, 1927, was signed, as set forth in finding 9 of the report, and any other testimony relative thereto, and to find and report the circumstances under which said order was so signed." The testimony heard by the master as the basis of his original report is not in the record but he has included as a part of his supplemental report, although not required so to do, the testimony heard by him after the report was recommitted. He has also made findings of

fact in this report. Upon the filing of a supplemental re-
port an interlocutory decree was entered confirming both
reports, and from this decree no appeal was taken. The
part of the bill which sought to reach the interest of Nathan
Greenfield in a parcel of real estate alleged to be owned
by him but standing in the name of the defendant Ida
Woogmaster has been disposed of by the finding that
Nathan Greenfield had no interest in this real estate as
owner, followed by a decree dismissing the bill as to Ida
Woogmaster.

The trial judge, in ordering the entry of a final decree for
the plaintiff, found and ruled upon the facts reported by
the master and inferences reasonably to be drawn there-
from that the bank did not after January 3, 1930, hold the
Woogmaster mortgage and note as collateral security for
the Meyer J. Greenfield note but did have the right under
the order indorsed on the Woogmaster note to receive the
instalments of principal paid on it and to apply them to the
Meyer J. Greenfield note until Nathan Greenfield revoked
his order or his creditors intervened. There is no reason
·why the trial judge or this court should undertake to pass
upon the veracity of witnesses whose testimony before the
master appears in his supplemental report or to decide
what weight should be given to that testimony. That was
the province of the master who saw and heard these wit-
nesses and who also heard the evidence not in the record
upon which his original report was based. *Cook* v. *Scheffreen,*
215 Mass. 444, 447. *Goodman* v. *Goldman,* 265 Mass. 85,
86. *Dondis* v. *Lash,* 277 Mass. 477, 482. If in the opinion
of counsel additional findings of fact should have been
made, the matter should have been brought to the atten-
tion of the trial judge in some appropriate way. On this
record the case must be decided in this court upon the facts
found by the master in the reports filed, with reasonable
inferences to be drawn therefrom. None of the material
facts found in either report is to be disregarded, and none
is to be modified or changed, unless modification or change
is required by inconsistent findings therein.

The final decree established the indebtedness of Nathan

Greenfield and two others to the plaintiff in a specified amount, ordered that the Woogmaster note and mortgage in the possession of the bank were not held by it as collateral security, and that the plaintiff is entitled to have it reached and applied unless Nathan Greenfield should pay the amount of his indebtedness within a specified time. The bank appealed from this decree.

The collateral note of Nathan Greenfield recited that the Woogmaster note and mortgage were pledged as "security for the payment of this and all other direct or contingent liabilities of the undersigned to the bank, due or to become due, whether now existing or hereafter arising." Regular payments were made on the Woogmaster note in accordance with its terms and credited on the collateral note to and including January 3, 1930, when the balance of $300 then due on the collateral note was paid, the balance then due on the Woogmaster mortgage note being $2,000. On January 3, 1930, the bank lent $3,519.88 to Meyer J. Greenfield, a son of Nathan Greenfield, for which the former gave his collateral note to the bank and assigned to it as security therefor a note for $10,000, dated January 9, 1925, and a second mortgage on real estate located on Walnut Street, in Chelsea, signed by Eva Greenfield and Nathan Greenfield, made payable to the order of Bernard S. Greenfield (also a son of Nathan Greenfield). The collateral note of Meyer J. Greenfield to the bank recites that the unpaid balance on the $10,000 note is $6,750 and that it is pledged "as security for the payment of this and all other direct or contingent liabilities of the undersigned to the bank, due or to become due, whether now existing or hereafter arising." No other security for this collateral note was mentioned in it. It appeared that some payments due on the principal of the Walnut Street mortgage had not been made. The amount of the loan thus made to Meyer J. Greenfield was the same as the indebtedness of Bernard S. Greenfield to the bank theretofore existing which had been secured by the Walnut Street mortgage and note as collateral, and this indebtedness of Bernard S. Greenfield was settled by the new loan to his brother. In

connection with this new loan the president of the bank drafted the Meyer J. Greenfield collateral note, the assignment of the Walnut Street mortgage and note from the bank to Bernard S. Greenfield, the assignment of the same mortgage from Bernard S. Greenfield to Meyer J. Greenfield, and the assignment of it from Meyer J. Greenfield to the bank as security for his collateral note. All of these instruments were duly executed. The master in his first report found that the bank did not hold the Woogmaster note and mortgage as collateral security for the Meyer J. Greenfield note, for the reason that on January 3, 1930, Nathan Greenfield had paid the bank the balance due on his loan of $4,000, and the bank returned to him his collateral note, thus ending the transaction. He also found that, at the time of the loan to Meyer J. Greenfield, Nathan Greenfield was not indebted to the bank, a finding which necessarily means that at the time of that loan the final payment on the loan to Nathan Greenfield had been made. On the same day, January 3, 1930, an arrangement was made by which quarterly payments of $250 should thereafter be made on the Woogmaster note instead of $300 as required by the terms of the note, and this arrangement was noted on the back of the Woogmaster mortgage note by a pencil memorandum written by the president of the bank. At the same time the loan to Meyer J. Greenfield was made, Nathan Greenfield, at the request of the president of the bank, signed on the back of the Woogmaster note an order in the following words: "Please apply all future payments on this note to mortgage note of Meyer Greenfield (Coll. note of Meyer Greenfield dated 1/3/30 or renewals thereof)." The note in this form was retained by the bank, which received two payments of $250 each on account thereof, one on April 3, 1930, and the other on July 3, 1930, and applied both on the Meyer J. Greenfield loan.

We cannot say when all the findings are considered that the master was clearly wrong in finding that at the time of the loan to Meyer J. Greenfield Nathan Greenfield was not indebted to the bank. When the note and mortgage on the Walnut Street property, signed by Nathan Greenfield, which

the bank had held to secure an indebtedness of Bernard S. Greenfield, had been reassigned by the bank to Bernard S. Greenfield, any contingent liability of Nathan Greenfield to the bank in connection therewith ceased until the securities were reassigned to it in connection with the loan to Meyer J. Greenfield. If at that time the bank had received the balance due on the Nathan Greenfield collateral note for $4,000 and given up that note, the finding that at the time of the loan by the bank to Meyer J. Greenfield Nathan Greenfield was not indebted to the bank could have been made. "Contracts should be so construed as to carry into effect the reasonable intention of the parties if that can be ascertained." *Greene* v. *Boston Safe Deposit & Trust Co.* 255 Mass. 519, 524. When the bank had been paid in full the direct debt of Nathan Greenfield to it, and had reassigned to Bernard S. Greenfield the note and mortgage on the Walnut Street property on which Nathan Greenfield had been under a contingent liability to the bank, the bank, although having in its possession the Woogmaster note and having title of record to the mortgage, had no lien upon them arising either from contract or by implication of law, and thereafter gained no lien unless by reason of a new contract. See G. L. c. 107, § 50. *Neponset Bank* v. *Leland,* 5 Met. 259, 261. *Biebinger* v. *Continental Bank,* 99 U. S. 143. When the right to hold the note and mortgage as collateral security had come to an end and the rights of the plaintiff had been asserted by the plaintiff's suit, the mere fact that the bank had a title of record would give it no right to continue to hold the securities and collect the amount due on the note except in so far as a new contract giving it that right was made. *Merrifield* v. *Baker,* 9 Allen, 29.

The bank holds no title to the Woogmaster note and mortgage superior to that of creditors unless the transaction of January 3, 1930, amounted to a repledge thereof to secure the indebtedness to it of Meyer J. Greenfield. We assume, without deciding, that the bank, being holder of record of the legal title to the Woogmaster note and mortgage, might become pledgee of the same on a new loan to another person without receiving a new assignment of them. See *Foster* v.

*Commercial National Bank,* 248 Mass. 279, 284.   The giving up by the bank of the $4,000 collateral note of Nathan Greenfield when paid in full would seem to indicate that the parties understood that the agreement therein contained, to the effect that the collateral held to secure it, namely the Woogmaster note and mortgage, should be held not only for the payment of the $4,000 indebtedness of Nathan Greenfield to the bank but also for all his other direct or contingent liabilities to the bank, was at an end.   There is no finding to the effect that the loan to Meyer J. Greenfield was made in reliance upon an agreement that the Woogmaster note and mortgage should be held as security therefor.   But the find-- ings in the supplemental report are, in substance, that the arrangement made on January 3, 1930, between the Green- fields and the president of the bank was that the payments made by Woogmaster on the Woogmaster note would be applied as payments on the Meyer J. Greenfield note, and as the result of this arrangement the indorsement on the Woog- master note to which reference has been made was written by the president of the bank and signed by Nathan Green- field.   Upon the facts found and reasonable inferences to be drawn therefrom the arrangement made and the order in- dorsed upon the Woogmaster note were not an irrevocable assignment of funds coming due Nathan Greenfield, but amounted to no more than a direction for the application of collections.   See *Langdon* v. *Langdon,* 4 Gray, 186; *James* v. *Newton,* 142 Mass. 366; *Andrews Electric, Inc.* v. *St. Alphonse Catholic Total Abstinence Society,* 233 Mass. 20. This arrangement and order gave the bank no rights in the Woogmaster note and mortgage superior to those of attach- ing creditors.

*Decree affirmed with costs.*