159 N.J. Super. 139 (1977)
387 A.2d 385
JON P. GUTERMUTH AND JUDITH M. GUTERMUTH, PLAINTIFFS,
v.
MATTHEW ROPIECKI, ARTHUR MORRIS, DONALD LEE STORMS, RUTH M. STORMS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 8, 1977.
*141 Mr. John W. Wopat, III, for plaintiffs (Messrs. McOmber & McOmber, attorneys).
Mr. Robert G. Saliba, for defendants.
POLOW, J.S.C.
This matter was submitted for decision on stipulated facts and documents, there being no material facts in dispute. The question is whether an enforceable lien is created by the docketing of a judgment against one of the grantors in a deed to real property shortly after conveyance of the property to the purchaser but before the deed and purchase money mortgage were placed on record.
Plaintiffs Gutermuth took title to a single-family residence from defendants Storms on July 25, 1975, during a closing at about 10 A.M. that morning. According to the closing statement, the total purchase price was $60,500 and it was to be satisfied by credit to purchasers of $59,961.32 for tax and insurance adjustments, realty transfer fee and the sums necessary to satisfy two outstanding mortgages and two judgments of record. The balance of the purchase price in the sum of $538.68 was delivered to the sellers attorney, the sellers having not appeared at the closing.
Counsel for the purchasers had arranged for a final continuation of the title search, including a judgment search on the morning of the closing, and determined that no additional liens appeared of record before the closing took place. Upon completion of the closing, counsel for the purchasers retained all the necessary funds in escrow to satisfy known existing liens and arranged for delivery of the *142 new deed and purchase-money mortgage for recording. Although the record does not indicate the manner in which the deed was delivered to the Morris County Clerk for recording, counsel agree that it is fair to assume it was placed in the mail. The closing took place on Friday, July 25, 1975, and the deed was recorded four days later, Tuesday, July 29, 1975.
At 11:23 A.M. on July 25, 1975, within about 1 1/2 hours after the closing had been completed, a judgment in excess of $15,000 was docketed against David Lee Storms, one of the grantors, in favor of defendants Ropiecki and Morris. The Ropiecki-Morris judgment was based upon a judgment obtained by the creditors in the State of New York two years previously against Storms and a corporation in which he was involved. Defendant Ruth M. Storms, who held title with her husband, by the entirety, before the conveyance, was not named in the judgment, hence it is conceded that any lien which may be found to exist is limited to the interest of the husband, Donald Lee Storms.
Defendants Storms moved out of New Jersey before the closing and have not appeared in this action. Plaintiffs seek a judgment quieting title by declaring the Ropiecki-Morris judgment of no force and effect as a lien against the title in question. Defendants Ropiecki and Morris seek to enforce the judgment as a lien against the interest of Donald Lee Storms in the property as a matter of record at the time their judgment was docketed. They concede that enforcement of such a lien would be complicated because of the ownership by the entirety.
A judgment creditor levying against the debtor spouse acquires no greater rights than that spouse had, i.e., a one-half interest in the life estate, for the joint lives, and the debtor spouse's right of survivorship. Newman v. Chase, 70 N.J. 254 (1976); King v. Greene, 30 N.J. 395 (1959). But in view of the result reached by this court, we need not be concerned with that problem here.
*143 It is stipulated that plaintiffs had neither actual nor constructive notice of the Ropiecki-Morris judgment and that Ropiecki and Morris had neither actual nor constructive notice of the conveyance on July 25, 1976. It is further stipulated that the affidavit of title executed by the Storms for the closing "did not reveal the likelihood of a judgment to be entered on behalf of Ropiecki and Morris." It is conceded that the affidavit of title of Donald Lee Storms contains a misrepresentation of fact in that it fails to recite the New York judgment and the pendency of the suit on that judgment in this State.
Plaintiff's reliance on the doctrine of equitable subrogation under these circumstances is well placed. Where a purchaser retains funds in escrow to satisfy existing mortgage and judgments liens, and in fact ultimately uses such funds to satisfy those liens, such purchaser stands in the shoes of those mortgage and judgment lienholders and may assert their claims to priority as against any subsequent lien claimant.
In Camden Cty. Welfare Bd. v. Federal Dep. Ins. Co., 1 N.J. Super. 532 (Ch. Div. 1948), the welfare board took a deed and paid off a mortgage on the property without being aware of defendant's judgment. The court agreed with the board's argument that it was subrogated to the position of the mortgagee whose lien it had satisfied. Where justice requires, a pro tanto subrogation should be decreed.
Plaintiffs, it is stipulated, paid off and discharged the two mortgages and two judgments, which were open of record before the closing, although the liens were not discharged until sometime after the Ropiecki-Morris judgment had been docketed. Satisfaction of those four liens required application of a very substantial portion of the purchase price. This was accomplished by plaintiffs without any awareness of defendants' judgment and with the understanding and belief that they thereby obtained clear title. Surely, the fact that plaintiffs satisfied prior liens aggregating more than $59,600 out of a total sales price of $60,500 cannot advance the position *144 of an unknown junior encumbrancer at the expense of the innocent purchaser and mortgagee. Cunningham and Tischler have addressed this point in 29 N.J. Practice 669:
If the grantee-payor did not know of the existence of a junior encumbrance when he purchased, and did not "assume" or take "subject to" all encumbrances, the better view is that he may be entitled to keep the mortgage alive and enforce it by subrogation even though the junior encumbrance was a matter of record and he was negligent in not learning about it. As Osborne has pointed out,
`* * * Only actual, not constructive notice, has relevancy on the question of what the expectations of the payor were. Insofar as it implies culpability in not discovering the junior liens it stands on a footing with negligence. And negligence which has not resulted in harm to anyone should not be invoked to permit unjust enrichment of the later lienors through their unearned and fortuitous advancement in priority by reason of the mistake of the grantee in paying and taking a discharge instead of an assignment.'
Several New Jersey cases clearly adopt the same attitude with respect to the payor's negligence. See Seeley v. Bacon, 34 A. 139, 141 (Ch. 1896); Institute Building & Loan Ass'n v. Edwards, 81 N.J. Eq. 359, 86 A. 962 (Ch. 1913); Jackson Trust Co. v. Gilkinson, 105 N.J. Eq. 116, 147 A. 113 (Ch. 1929); Home Owners' Loan Corp. v. Collins, 120 N.J. Eq. 266, 184 A. 621 (Ch. 1936); Chichi & Lombardo Building Co. v. Herrmann, 121 N.J. Eq. 252, 189 A. 625 (Ch. 1937); Cliffside Park Title & Guarantee Co. v. Progressive Theatres, 122 N.J. Eq. 109, 192 A. 520 (Ch. 1937); Camden County Welfare Bd. v. Federal Deposit Ins. Corp., 1 N.J. Super. 532, 549, 62 A.2d 416, 424 (Ch. Div. 1948).
Based upon the authority cited in the foregoing, I am satisfied that plaintiffs would be entitled to be equitably subrogated to the rights of the mortgagees and judgment creditors whose liens they satisfied as part of the purchase price even if the Ropiecki-Morris judgment had been recorded before the closing and had been mistakenly overlooked. Although a very early case held against the applicability of equitable subrogation in such a situation, Garwood v. Adm'rs of Eldridge, 2 N.J. Eq. 145 (Ch. 1839), the ample authority since, as previously cited, indicates clear recognition of the doctrine as controlling today to avoid an otherwise inequitable result. In any event, the case at bar involves a completed *145 closing, withholding of funds to satisfy the substantial prior liens, closing adjustments and expenses, and payment to the grantors of the small balance due, $538.68, before the judgment of defendants was docketed. Although the purchasers proceeded to satisfy and discharge the prior mortgage and judgment liens after it was docketed but without being aware of the existence of defendants judgment, plaintiffs are equitably subrogated to the rights of those satisfied lienholders and those liens are considered unsatisfied for the purpose of allocating priorities.
Defendants rely substantially on the recording statute, N.J.S.A. 46:22-1, which provides:
Every deed or instrument of the nature or description set forth in section 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against subsequent judgment creditors, purchasers and mortgagees.
Hence, Ropiecki and Morris, as subsequent judgment creditors without notice, insist the deed must be declared void as against them, having been recorded after their judgment, relying on In re Assignment for Creditors of Ridge Estates, Inc., 70 N.J. Super. 510 (App. Div. 1961). That argument, even if applicable, would still not alter the junior status of the Ropiecki-Morris lien with regard to the superior status of plaintiffs as equitable subrogees, and would leave defendant a claim to a lien on Mr. Storms' interest in the $538.68 which was delivered by check to the attorney of the sellers at the time of the closing. This result is based upon the factual conclusion supported by the stipulations and the record, without contradiction, that the selling price represents fair market value, that the buyers and sellers *146 were strangers when the contract of sale was executed and that there was no collusion nor connivance among them.
The question thus remains whether Ropiecki and Morris are entitled to any lien as against the individual interest of the judgment debtor as one of the tenants by the entirety, in the excess of the fair market value of the property over the total aggregate superior liens, under these circumstances, a sum of less than $1,000.
There is authority in this State for plaintiffs' position that in appropriate circumstances equity will control the legal lien of a judgment to protect the rights of persons with prior equitable interests in the property. In Rutherford Nat'l Bank v. H.R. Bogle & Co., 114 N.J. Eq. 571 (Ch. 1933), Bogle bid in the property in question at a sheriff's sale. Before the deed was delivered Bogle agreed to execute a mortgage on that property in favor of complainant to protect its interest therein. However, 41 minutes before the sheriff's deed to Bogle and the mortgage to complainant were recorded, a judgment was entered against Bogle. In holding that the agreement between Bogle and the complainant for execution of the mortgage, which existed before entry of the judgment against Bogle, constituted an equitable mortgage prior to the judgment lien, Vice-Chancellor Lewis stated:
The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done. To dedicate property, or to agree to do so, to a particular purpose or debt is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made. This wholesome equitable principle is one of wide, if not universal, recognition and application. Dean v. Anderson, 34 N.J. Eq. 496; Cummings v. Jackson, 55 N.J. Eq. 805; Clark v. Van Cleef, 75 N.J. Eq. 152; Payne v. Wilson, 74 N.Y. 348; Chase v. Peck, 21 N.Y. 581; Ketchum v. St. Louis, 101 U.S. 306, 25 L.Ed. 999; Walker v. Brown, 165 U.S. 654, 17 S.Ct. 453, 45 L.Ed. 865.
The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. If an intent to give, charge or pledge property, real or personal, as security for *147 an obligation appears, and the property or thing intended to be given, charged or pledged is sufficiently described or identified, then the equitable lien or mortgage will follow as of course. Robinson v. Urquhart, 12 N.J. Eq. 515; Griffin v. Griffin, 18 N.J. Eq. 104; Brewer v. Marshall, 19 N.J. Eq. 537; Martin v. Bowen, 51 N.J. Eq. 452; Oliva v. Bunaforza, 31 N.J. Eq. 395; Ketchum v. St. Louis, supra; Biebinger v. Continental Bank, 99 U.S. 143, 25 L.Ed. 271; Richardson v. Wren, 11 Ariz., 395, 95 P. 124, 16 L.R.A. (N.S.) 190; Hamilton v. Hamilton, 162 Ind. 430; 70 N.E. Rep. 535; Pinch v. Anthony, 90 Mass. [8 Allen] 536; Atlantic Trust Co. v. Holdsworth, 167 N.Y. 532; 16 N.E. Rep. 1106; Sprague v. Cochran, 144 N.Y. 104; 38 N.E. Rep. 1000; Coman v. Lakey, 80 N.Y. 345; Payne v. Wilson, supra; Chase v. Peck, supra. [at 573-574]
In that case, notwithstanding the fact that the judgment creditor had no notice or knowledge of the equitable mortgage when the judgment was entered, the complainant's equitable mortgage was held to be entitled to priority. In order to prevail, however, the equitable mortgage must be for a valuable consideration paid at the time the equity is created, in which event equity regards the equitable mortgagee as a bona fide purchaser. Wheeler and Green v. Kirtland, 24 N.J. Eq. 552 (E. & A. 1872).
We are not dealing, here, with the respective claims for priority as between equitable mortgagee and judgment creditor. Plaintiffs claim their priority as equitable owners based upon execution of the contract for sale prior to entry of the judgment in question. This argument would be a good deal more persuasive had the contract been recorded. See N.J.S.A. 46:21-3. However, plaintiffs were, in fact, bona fide purchasers for value who took legal title and paid the purchase price due the sellers before the judgment was docketed. Under all of the circumstances, giving due regard to the ultimate issue, now narrowed to a potential lien on the interest of one tenant by the entirety in the balance of $538.68 after satisfaction of all superior liens, adjustments and appropriate closing expenses, the fact that the defendant creditors had not relied on the title to the real estate in question when the judgment was entered and to finally dispose of the issue in a fair and equitable manner, there will *148 be a judgment in favor of plaintiff discharging the judgment lien as it affects the real property in question and dismissing the Ropiecki-Morris counterclaim to enforce such lien.
A final word is appropriate. There is, of course, an obligation imposed upon the purchaser to make a reasonable and diligent search of all dockets and records with regard to existence of liens and claims on and to real estate. However, it would be inequitable and unreasonable to automatically and unhesitatingly charge every purchaser, irrebutably, with notice of all matters placed on record, without his knowledge, almost immediately after a run-down search justified reliance for the purpose of closing. See Scult v. Bergen Valley Builders, Inc., 76 N.J. Super. 124 (Ch. Div. 1962). A more equitable inquiry under these circumstances concerns whether the grantees qualify, as here, as innocent purchasers for value, exercised reasonable diligence and whether the docketing judgment creditor placed any reliance on title in the sellers. Those questions, in this case, must be resolved in favor of plaintiffs, if equity is to be done.
However, counsel for plaintiffs declares in his brief that "plaintiffs, through their attorneys, took every possible step to insure that all liens of record were made known to them and satisfied at the time of closing." (Emphasis supplied). This decision should not be interpreted as necessarily in agreement with counsel on that point nor as holding that a delay of four days before recording the deed and mortgage complies, as a general rule, with the need for reasonable diligence. Resolution of those questions is not necessary for disposition of the case at bar. I address myself only to the circumstances of this case as specifically set forth in this opinion.