589 A.2d 1028

CITY OF UNION CITY, A BODY POLITIC, A/S/O FREDERICK E. FOSTER, PLAINTIFF–APPELLANT, v. ELEANOR VEALS AND THE MOTOR CLUB OF AMERICA, A NEW JERSEY CORPORATION, DEFENDANTS AND THIRD–PARTY PLAINTIFFS–RESPONDENTS, v. JASON FOSTER, THIRD–PARTY DEFENDANT.

FREDERICK E. FOSTER, PLAINTIFF–RESPONDENT, v. ELEANOR VEALS, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1991—Decided April 19, 1991.

Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.

*David C. Barry* argued the cause for appellant City of Union City, as subrogee of Frederick E. Foster (*Scarinci & Pelio*, attorneys; *Andre Schramenko*, of counsel and on the brief).

*Leonard Ginsberg* argued the cause for respondent Frederick E. Foster (*Robert Diorio*, attorney; *Leonard Ginsberg*, of counsel and on the letter brief).

*Samuel R. Mechanic* argued the cause for respondents Eleanor Veals and MCA Insurance Company (improperly pleaded as Motor Club of America) (*Daniel Leff*, on the letter brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

We granted leave to plaintiff City of Union City (Union City), which claimed to be a subrogee of plaintiff Frederick E. Foster (Foster), to appeal from a summary judgment of the Law Division declaring Foster to be solely entitled to the liability insurance coverage afforded defendant Eleanor Veals (Veals) by defendant MCA Insurance Company (improperly pleaded as Motor Club of America and hereinafter referred to as MCA) and directing MCA to pay those policy limits to Foster for his personal injuries.

Briefly, Foster was a passenger in his motor vehicle which was operated by his son, third-party defendant Jason Foster. The Foster vehicle collided with a vehicle owned and operated by Veals and Foster sustained serious personal injuries. At the time of the collision, Foster was employed by Union City as a fireman and was a member of the firemens' union. He was neither on duty nor acting in the course of his employment at the time of the accident. Under the terms of its Collective Bargaining Agreement with the Union City firemens' union, Union City was required to pay sick leave to Foster if he was out of work for any medical reason, even if that reason did not arise out of the course of his employment. The Collective Bargaining Agreement, effective at the time, in pertinent part, provided:

## ARTICLE VI

### SICK LEAVE AND TERMINAL LEAVE

A. Sick leave policy for all employees covered by this Agreement shall continue to be administered as in the past, i.e., unlimited sick leave regardless of the nature of the illness or injury.

* * *

H. 1. For the purposes of terminal leave, however, and that purpose only, a sick leave bank shall be created consisting of one hundred twenty (120) hours per year for each calendar year of employment with the City, which bank shall only be reduced by reason of sick leave used during the employee's tenure with the City for absences as a result of non-work connected injury or illness.

2. Upon the employee's retirement he shall be paid a terminal leave benefit in no event less than seven hundred twenty (720) hours pay or on the basis of one half of the remaining accumulated sick leave (one hour for every two), whichever benefit is greater.

3. Sick time shall be deducted on an hour for hour basis for regularly scheduled work time which is missed due to non-work related injury or illness.

4. In the case of an employee's death, such shall be considered retirement for the purposes of the terminal leave benefit being awarded and his estate shall be entitled to the compensation owed.

I. 1. Work connected injury or illness will not be cause for deduction of any benefits from the member's accumulated sick leave.

2. Non-work connected injury or illness shall be treated in the same manner as ordinary sick leave; that is charged to a maximum of one hundred twenty (120) hours per year.

In accordance with the terms of its Collective Bargaining Agreement, Union City paid Foster $38,198.16 as sick leave. Union City thereupon instituted an action against Veals and MCA claiming to be the subrogee of Foster. Veals and MCA denied liability to Union City and asserted that Union City had no right of subrogation in this case. MCA counterclaimed for interpleader to pay to either Union City or Foster on behalf of Veals $25,000—the policy limits provided by its automobile liability insurance policy issued to Veals. Foster then instituted a separate action against Veals, seeking to recover damages for his personal injuries sustained in the accident. Both actions were consolidated for trial.

Foster moved for summary judgment, claiming he was entitled to the $25,000 provided by MCA's insurance policy. Union City filed a cross-motion for summary judgment, claiming it, and not Foster, was entitled to recover the $25,000 insurance coverage. At the conclusion of argument, Judge Wefing in the Law Division granted summary judgment in favor of Foster, holding that Union City was not entitled to be subrogated to Foster's rights; Union City "had a contractual arrangement with its firemen to pay for sick leave," and "the suit [was] an attempt [by Union City] to reduce its contractual costs," which should not be used to deprive Foster of his right of recovery for his personal injuries sustained in the accident. We granted leave to appeal and now affirm.

■ Union City contends that the trial court erred in granting summary judgment in favor of Foster and that judgment should be entered in its favor, because it had a right of subrogation pursuant to *N.J.S.A.* 40A:5–32. We disagree. *N.J. S.A.* 40A:5–32, which is part of the Local Fiscal Affairs Law, *L.*1960, *c.* 169 § 1, and became effective on January 1, 1962, provides:

> Whenever any work shall be done or money expended by any local unit, whether by agreement or by the terms of any insurance policy, for which an individual or corporation is liable, the local unit shall be authorized to collect from such individual or corporation such sum or sums as shall be necessary to reimburse the local unit, and such sum or sums, when received, shall be placed to the credit of the appropriation from which the cost of doing such work shall have been expended.

It is fundamental that "the meaning of a statute must ... be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms." *Sheeran v. Nationwide Mutual Insurance Company, Inc.,* 80 *N.J.* 548, 556, 404 *A.*2d 625 (1979) (quoting *Caminetti v. United States,* 242 *U.S.* 470, 485, 37 *S.Ct.* 192, 194, 61 *L.Ed.* 442, 452 (1917)). *See State v. Maguire,* 84 *N.J.* 508, 528, 423 *A.*2d 294 (1980); *Vreeland v. Byrne,* 72 *N.J.* 292, 302, 370 *A.*2d 825 (1977); *DeHart v. Bambrick,* 177 *N.J.Super.* 541, 549, 427 *A.*2d 113 (App.Div.1981). *See also* 2A *Sutherland, Statutory Construction,* § 46.01 (C. Sands 4th ed. 1973). Further,

> one of the cardinal rules of statutory construction [is] that full force and effect must be given, if possible, to every word, clause and sentence of a statute. *Oldfield v. New Jersey Realty Co.,* 1 *N.J.* 63, 68 [61 *A.*2d 767] (1948). A construction that will render any part of a statute inoperative, superfluous or meaningless, is to be avoided. 2 *Sutherland, Statutory Construction* (3d ed) § 4705, p. 339. [*Hoffman v. Hock,* 8 *N.J.* 397, 406–07, 86 *A.*2d 121 (1952)].

*See Paper Mill Playhouse v. Millburn Tp.,* 95 *N.J.* 503, 521, 472 *A.*2d 517 (1984); *Abbotts Dairies v. Armstrong,* 14 *N.J.* 319, 328, 102 *A.*2d 372 (1954); *In re the Application of Boardwalk Regency Corp. for a Casino License,* 180 *N.J.Super.* 324, 344, 434 *A.*2d 1111 (App.Div.1981), *modified* 90 *N.J.* 361, 447 *A.*2d 1335, *appeal dismissed sub nom. Perlman v. Attorney General of New Jersey,* 459 *U.S.* 1081, 103 *S.Ct.* 562, 74

*L.Ed.*2d 927 (1982). The court must "read the statute in its entirety and give effect wherever possible to all the words used." *Williams v. Board of Ed. Deptford Tp.*, 192 *N.J.Super.* 31, 40, 469 *A.*2d 58 (App.Div.1983), *aff'd o.b.*, 98 *N.J.* 319, 486 *A.*2d 846 (1985) (citing *Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 68, 389 *A.*2d 465 (1978); *Gabin v. Skyline Cabana Club*, 54 *N.J.* 550, 555, 258 *A.*2d 6 (1969); *Foy v. Dayko*, 82 *N.J.Super.* 8, 13, 196 *A.*2d 535 (App.Div.1964)).

Applying these principles, we are convinced that Union City does not have a statutory right of subrogation or reimbursement for the sick leave it paid to Foster pursuant to its Collective Bargaining Agreement. Although the first phrase of *N.J.S.A.* 40A:5–32 is rather broad and general, it is perfectly plain that, when read in its entirety and when all of the words and phrases are given their ordinary and well-understood meaning, a local government unit has only a right of reimbursement with respect to monies spent for work done, not for sick leave paid pursuant to a collective bargaining agreement.

Moreover, the legislative history of *N.J.S.A.* 40A:5–32 supports our view that the Legislature did not intend to grant local governments a direct right of subrogation or reimbursement in cases of this kind. The Assembly Statement accompanying the 1921 statute, which is substantially similar to the present statute, stated its purpose as follows:

> The purpose of this act is to permit municipalities compelled to spend money to do work for which they are afterwards reimbursed by the person liable to return the money received to the proper fund. [A. 518, *L.*1917, *c.* 252].

The Assembly Statement in connection with the 1921 Act is clear in its expression that a municipality has a direct right to sue for reimbursement only when it has "spen[t] money to do work." Consequently, Union City's payment of sick leave benefits to Foster pursuant to its Collective Bargaining Agreement does not fall within the scope or purview of *N.J.S.A.* 40A:5–32, and therefore, Union City does not have a statutory right of subrogation or reimbursement against Veals.

In addition, we are satisfied that the trial court properly held that Union City did not have an equitable right of subrogation. "[S]ubrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it [and] ... to serve the interests of essential justice between the parties." *Culver v. Insurance Co. of North America*, 115 *N.J.* 451, 455–56, 559 *A.*2d 400 (1989) (quoting *Standard Accident Insurance Co. v. Pellecchia*, 15 *N.J.* 162, 171, 104 *A.*2d 288 (1954)). It is important to understand that subrogation rights neither arise spontaneously nor are they free floating or open-ended. Subrogation rights are created in one of three ways: (1) by an agreement between an insurer and the insured, (2) by statute, or (3) by a judicial device of equity to compel the ultimate discharge of an obligation by one who in good conscience ought to pay it. *See Culver v. Insurance Co. of North America*, 115 *N.J.* at 456, 559 *A.*2d 400 (quoting *Aetna Ins. Co. v. Gilchrist Brothers, Inc.*, 85 *N.J.* 550, 560, 428 *A.*2d 1254 (1981)). In our view, equitable subrogation does not apply here.

First, Union City's obligation to pay Foster sick leave was pursuant to its Collective Bargaining Agreement. That Collective Bargaining Agreement neither resembles an agreement between an insurer and its insured nor does it expressly or implicitly provide for subrogation or reimbursement. Second, as we have held above, *N.J.S.A.* 40A:5–32 does not create a right of subrogation or reimbursement in favor of Union City in the circumstances of this case. Third, application of the doctrine of subrogation does not serve the interests of essential justice. Union City's contractual obligation to pay sick leave regardless of how the employee's inability to work arose while not granting to Union City the right of subrogation or reimbursement is a bargained for condition of employment. Thus, payment of sick leave pursuant to the contract without the concomitant right of recovery by way of subrogation or reimbursement neither renders those payments inequitable nor offends the interests of essential justice.

Union City's payment of sick leave benefits in no way discharged Veals' obligation, as a tortfeasor, owed to Foster. Veals is still liable to Foster for the damages caused by her negligence. Furthermore, as it appears from the Collective Bargaining Agreement, upon retirement, Foster's terminal leave benefits will be reduced through the use of his accumulated sick leave. Therefore, if Union City is allowed to recover those sick leave benefits it paid to Foster, it would be unjustly enriched to the extent of the diminution in Foster's terminal leave benefits because of his reduced accumulated sick leave. Finally, since it appears that Foster has not been made whole by Union City for his personal injuries, Union City is not entitled to be reimbursed for the sick leave benefits it paid to Foster. Equity demands that Foster recover fully his whole loss before Union City or anyone else can recover any payments under a theory of subrogation. *See Restatement of Restitution* § 162 comment C (1937).

In sum, we are satisfied that in the circumstances of this case, Union City does not have an equitable right of subrogation and that the summary judgment in favor of Foster was proper. *See, e.g., City of Birmingham v. Walker,* 267 *Ala.* 150, 101 *So.*2d 250 (1958); *Standard Oil of California v. United States,* 153 *F.*2d 958 (9th Cir.1946), *aff'd sub nom. United States v. Standard Oil of California,* 332 *U.S.* 301, 67 *S.Ct.* 1604, 91 *L.Ed.* 2067 (1947); *Steen v. Dean,* 40 *A.D.*2d 579, 334 *N.Y.S.*2d 648 (App.Div.1972), *aff'd,* 33 *N.Y.*2d 605, 347 *N.Y.S.*2d 570, 301 *N.E.*2d 542 (1973). *But cf. Topelski v. Universal South Side Autos, Inc.,* 407 *Pa.* 339, 180 *A.*2d 414 (1962); *City of Philadelphia v. Philadelphia Rapid Transit Co.,* 337 *Pa.* 1, 10 *A.*2d 434 (1940); *Furia v. City of Philadelphia,* 180 *Pa.Super.* 50, 118 *A.*2d 236 (Super.Ct.1955); *Potoczny ex rel. City of Philadelphia v. Vallejo,* 170 *Pa.Super.* 377, 85 *A.*2d 675 (Super.Ct.1952). *See also* Annotation, *Right of Recovery Over By Means of Subrogation or Other Similar Theory, Against a Third–Party Tortfeasor, of an Employer Who has Paid Salary, Wages, Sick Leave Pay, Medical Ex-*

*penses, or the Like, to or for an Injured Employee,* 70 *A.L.R.*2d 475, 476–77 (1960).

Affirmed.

D'ANNUNZIO, J.A.D. (concurring).

I concur in the result. However, I do not believe that it is necessary to decide whether Union City has an equitable right of subrogation *against the tortfeasor* to recover the sick pay Foster received. The order appealed from was entered on cross-motions of Union City and Foster seeking an adjudication of entitlement to the $25,000 offered by MCA, Veals' insurance carrier. The order on appeal merely provided that Foster, the employee, was entitled to the $25,000 policy limits. The order did not adjudicate Union City's right ultimately to seek reimbursement from the tortfeasor.

Stated another way, the adjudicated dispute was a contest between the employer and its employee for the first dollar of recovery, *i.e.,* whether the employer was entitled to recover before the employee's personal injury claim has been fully satisfied. That dispute was governed by the collective bargaining agreement. I agree that the agreement does not support Union City's position.